IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINCOLN NATIONAL | : | CIVIL ACTION |
| CORPORATION | : | |
| | : | No.   16-2588 |
| v. | : | |
| | : | |
| CHRISTOPHER WADE FLINT | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                    **November 9, 2016**

In this breach of contract action, Plaintiff Lincoln National Corporation (LNC) sues

Christopher Wade Flint, a former executive of multiple LNC subsidiaries, for violating the terms

of certain option and stock awards he received during his nine-year tenure with LNC in

Pennsylvania.  Flint, who now resides in Alabama, moves to dismiss the action for lack of

personal jurisdiction, improper venue, and failure to state a claim upon which relief can be

granted, pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6), respectively.

Alternatively, Flint moves to transfer the case to the Northern District of Alabama.  Because both

personal jurisdiction and venue appear proper in this District, and because LNC has pleaded a

plausible claim for breach of contract, Flint's motion to dismiss will be denied.  The motion to

transfer will also be denied, as Flint has not shown the relevant factors weigh in favor of an

Alabama forum.

## BACKGROUND[1]

---

[1]  Except where otherwise specifically noted, the following facts are drawn from LNC's
Complaint, the allegations of which the Court accepts as true for purposes of deciding the instant
motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule
12(b)(6) motion to dismiss should "assume the[] veracity" of the complaint's "well-pleaded
factual allegations"); *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir.
2012) (holding a court evaluating a motion to dismiss for improper venue "accept[s] as true all of
the allegations in the complaint, unless those allegations are contradicted by the defendants'
affidavits"); *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)  (holding a

LNC is an Indiana corporation with its principal place of business in Radnor, Pennsylvania.  LNC and/or its subsidiaries also have offices in Philadelphia, Pennsylvania.  *See* Compl. ¶ 2.  From April 2006 until June 2015, Flint worked for various LNC subsidiaries—including Lincoln Financial Securities Corporation (LFS)—in Philadelphia.  During his tenure with LNC, Flint received awards of stock options in 2008 and 2012, and received awards of restricted stock units and performance stock units in 2012.  The agreements accompanying the awards included a competitive services restriction which prohibited Flint from, inter alia, becoming employed by an organization that competed with, or provided or planned to provide the same or similar products and/or services as, the LNC business unit in which he was last employed prior to leaving the company.  The agreements also authorized LNC to rescind the awards if Flint violated the competitive services restriction within six months of exercising the options or receiving a distribution of stock pursuant to the stock awards, providing that if LNC exercised its right to rescind, Flint would be required to pay LNC any gain realized on the exercise of the options and to return to LNC any shares received pursuant to the stock awards.

In February 2015, Flint received a total of 6,342 shares of LNC common stock pursuant to the stock awards he had been granted in February 2012.  *See id.* ¶¶ 40, 48.  A few months later, in May 2015, Flint exercised options he had been awarded in February 2008 and February 2012, purchasing a total of 10,137 shares of LNC common stock and realizing a gain of $120,087.60.  *See id.* ¶¶ 26, 33.  At the time these transactions occurred, Flint held the position of President of LFS.

---

court "reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff").

On June 9, 2015, less than a month after exercising the options, Flint resigned.  A month later, on July 7, 2015, Protective Life Corporation announced it had hired Flint as President and CEO of its broker-dealer subsidiary, ProEquities, Inc., which is located in Birmingham, Alabama.  *See id.* ¶ 15; Def.'s Mot. to Dismiss 2.

According to the Complaint, both ProEquities and its parent corporation (Protective) are direct competitors of LFS, the LNC business unit where Flint worked at the time of his resignation.  *See* Compl. ¶¶ 15, 20.  LFS operates as a broker-dealer and provides investment advisory services, financial planning services, and financial consulting services to individual and institutional clients through a network of independent financial professionals.  *See id.* ¶ 9. ProEquities also acts as a broker-dealer, offering and providing compliance, wealth management, retirement planning, investment advice, and marketing and operational support to independent advisors, and offering opportunities for direct investment in tangible and hard assets and fixed income products, including products offered through LNC and its subsidiaries.  *See id.* ¶¶ 16-18. LNC alleges LFS and ProEquities "provide the same wealth management, retirement planning and investment advice."  *Id.* ¶ 20.

On August 11, 2015, LNC sent Flint a notice of rescission concerning the stock he received and the options he exercised in the six months before he joined ProEquities in July 2015, demanding that Flint repay the $120,087.60 gain he realized on the exercise of the options and return the 6,342 shares of LNC common stock.  LNC sent Flint a second demand letter on September 30, 2015.  Flint did not respond to either letter.  In December 2015, Flint requested that LNC waive enforcement of the rescission provisions, but LNC declined to do so.

In May 2016, LNC filed the Complaint in this action, asserting claims against Flint for breach of contract and, in the alternative, for unjust enrichment and conversion.  In August 2016,

Flint filed the instant motion to dismiss, arguing this Court lacks personal jurisdiction over him, venue is improper in this District, and the Complaint fails to allege a plausible breach of contract claim.[2]   Flint alternatively asks this Court to transfer this case to the Northern District of Alabama, where he currently resides and where ProEquities is located.   The Court heard argument on the motion at the October 11, 2016, Rule 16 conference, following which LNC voluntarily dismissed its unjust enrichment and conversion claims.

**DISCUSSION**

**A.   Personal Jurisdiction**

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  The Pennsylvania long-arm statute "provides for jurisdiction 'based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States.'"   *Id.* (alteration in original) (quoting 42 Pa. Cons. Stat. § 5322(b)).  Accordingly, in determining whether this Court may exercise personal jurisdiction over Flint in this action, the Court must consider whether Flint has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Id.* at 316-17 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Although there are two categories of personal jurisdiction—general jurisdiction and specific jurisdiction—only the latter is at issue here.  Specific jurisdiction exists when (1) the defendant "purposefully directed [his] activities at the forum"; (2) the litigation "arise[s] out of

---

[2] Flint also argued LNC's unjust enrichment and conversion claims were barred by the gist of the action doctrine.  Because LNC has since voluntarily dismissed those claims, Flint's gist of the action argument is not addressed herein.

or relate[s] to at least one of those activities"; and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* at 317 (third alteration in original) (internal quotation marks and citations omitted). Because specific jurisdiction depends on a link between the plaintiff's cause of action and the defendant's forum-related activities, the determination whether specific jurisdiction exists is claim-specific. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). In evaluating specific jurisdiction with respect to a breach of contract claim, a court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Id.* at 256. The court should also consider "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)) (emphasis omitted).

When personal jurisdiction is challenged, the burden is on the plaintiff to establish sufficient contacts between the defendant and the forum to support jurisdiction. *See O'Connor*, 496 F.3d at 316; *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). While the plaintiff ultimately must establish the relevant jurisdictional facts by a preponderance of the evidence, at the motion to dismiss stage, unless the court holds an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *See Carteret Sav. Bank*, 954 F.2d at 142 n.1.

LNC has made the requisite showing that the requirements for personal jurisdiction are satisfied in this case. LNC sues Flint for breaching the terms of the option and stock awards, contracts formed entirely in Pennsylvania during Flint's nine-year tenure with LNC's subsidiaries in Pennsylvania. Flint purposefully directed his activities at Pennsylvania by

5

entering into agreements with his Pennsylvania employer in Pennsylvania, and LNC's claims arise out of these Pennsylvania-based contracts. Although Flint acknowledges his former employment with LNC's subsidiaries "gave rise to the grants of money and stock at issue," Def.'s Mem. in Supp. of Mot. to Dismiss 8, he argues these Pennsylvania contacts are irrelevant because the alleged wrongdoing in this case—his acceptance of employment with an alleged competitor of LNC—occurred in Alabama. Flint cites no authority for the proposition that the only relevant jurisdictional contact in breach of contract action is the location of the breach, and, as noted, the case law holds otherwise. *See Telcordia Tech Inc.*, 458 F.3d at 177 (noting the relevant jurisdictional contacts in a contract case include where the contract was formed); *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 354-56 (E.D. Pa. 2016) (holding Colorado- and Virginia-based former employees of a company headquartered in Pennsylvania were subject to personal jurisdiction in Pennsylvania in an action for breach of a non-solicitation agreement, as "Pennsylvania was the legal fulcrum for their contractual obligations"). Notably, LNC sues Flint for refusing to honor his obligations under the agreements in question to repay gains he realized on the options and to return shares of LNC common stock, obligations he presumably owes to LNC in Pennsylvania. *See* Compl. ¶¶ 64-66. Finally, although Flint no longer resides in Pennsylvania, the Court perceives no reason why the exercise of personal jurisdiction over Flint in Pennsylvania would not otherwise comport with fair play and substantial justice. To the contrary, having accepted the option and stock awards on the terms offered by LNC during his employment with LNC's subsidiaries in Pennsylvania, Flint should reasonably have anticipated LNC would seek to enforce the agreements in Pennsylvania. Flint's motion to dismiss for lack of jurisdiction will therefore be denied.[3]

---

[3] In his reply brief, Flint faults LNC for failing to produce sworn affidavits or other competent

## B.      Venue and Transfer

In urging the Court to dismiss this case for improper venue, Flint relies primarily on the doctrine of forum non conveniens.  *See* Def.'s Mem. in Supp. of Mot. to Dismiss 9-10; Def.'s Reply 6-8 (quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869 (3d Cir. 2013), a forum non conveniens case).  Whether venue is proper in this district, however, is governed by the federal venue statute, 28 U.S.C. § 1391.  *See id.* § 1391(a)(1) (providing that "[e]xcept as otherwise provided by law," § 1391 "shall govern the venue of all civil actions brought in district courts of the United States").  Under the venue statute, a civil action may be brought in, inter alia, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  A defendant seeking a dismissal for improper venue has the burden to show venue is improper.  *Bockman*, 459 F. App'x at 160.

As set forth above, the events and omissions giving rise to LNC's breach of contract claim include the formation of the agreements in question and Flint's exercise of options and receipt of distributions of stock pursuant to those agreements, all of which occurred in Pennsylvania.  Venue is therefore proper in this district under § 1391(b)(2), and Flint's motion to dismiss this case for improper venue will also be denied.

Flint alternatively asks this Court to transfer this case to the Northern District of Alabama, where he currently resides.  Because venue is proper in this district and would also be

---

evidence to support its jurisdictional allegations.  Notably, however, Flint does not contest LNC's jurisdictional allegations, as he does not dispute having received the option and stock awards during his nine-year tenure with LNC's subsidiaries in Pennsylvania.  These allegations, which the Court accepts as true for purposes of the instant motion to dismiss, are sufficient to establish a prima facie case of jurisdiction over Flint in Pennsylvania.  *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371-73 (3d Cir. 2002) (holding a plaintiff had made a sufficient showing of personal jurisdiction to withstand a Rule 12(b)(2) motion to dismiss based on the facts alleged in the complaint).

proper in the Northern District of Alabama,[4] the transfer issue in this case is governed by 28 U.S.C. § 1404(a), which permits a district court to transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice."  As the party seeking transfer, Flint bears the burden of establishing the need for transfer, and LNC's choice of venue "should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal quotation marks and citation omitted).  While the ultimate decision to transfer "is in the court's discretion, . . . a transfer is not to be liberally granted."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted).

The Third Circuit Court of Appeals has identified a number of private and public interest factors a court should consider in determining whether transfer is warranted.   The private interests include (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  *Jumara*, 55 F.3d at 879.  The public interests include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Id.* at 879-80.

---

[4] Under § 1391(b)(1), venue in a civil action is also proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

Only two of the foregoing private and public interest factors—the defendant's forum preference and the relative convenience of the parties—weigh at all in favor of transfer.  The defendant's forum preference clearly weighs in favor of transfer, as Flint prefers to litigate in Alabama.  Although the convenience of the parties factor is more equivocal, the Court accepts, for purposes of Flint's transfer motion, that the inconvenience to Flint from litigating this case in Pennsylvania would be greater than the inconvenience to LNC if the case were litigated in Alabama, where LNC has some corporate presence.

In contrast, at least three of the private and public interest factors weigh against transfer.  Notably, the plaintiff's forum preference, a "paramount consideration" in the transfer analysis, *see Shutte*, 431 F.2d at 25, weighs against transfer, as LNC prefers to litigate in this district, where it is headquartered.  The local interest in deciding local controversies at home and the familiarity of the trial judge with the applicable state law also favor a Pennsylvania forum as this case concerns LNC's efforts to enforce its rights under Pennsylvania-based contracts, a controversy presumably governed by Pennsylvania law.

The remaining factors are largely neutral.  While LNC's breach of contract claim arose in part in Alabama, where Flint went to work for an alleged competitor of LFS, the claim also arose in Pennsylvania, where Flint entered into the agreements at issue and where his repayment obligations were due.  The convenience of witnesses and the location of books and records are also neutral, despite Flint's arguments to the contrary.  Flint maintains these factors favor transfer because the focus of this litigation will be on whether ProEquities, his current employer, is a competitor of LFS, and the case will thus require significant deposition and document discovery in Alabama from Flint himself and from ProEquities concerning Flint's current job responsibilities.  As LNC notes, however, resolution of this issue will also require discovery

from LNC/LFS witnesses in Pennsylvania regarding Flint's job responsibilities at LFS. Moreover, witness convenience and the location of books and records are only relevant insofar the evidence in question would be unavailable for trial in one of the fora. Flint has not shown he would be deprived of any specific witnesses or other evidence if this case were tried in this district. Nor has he shown the balance of witnesses in this case is such that the case could more easily or less expensively be tried in the Northern District of Alabama than in this district. Flint has made no showing that the remaining public interest factors—enforceability of the judgment, relative court congestion, and public policies—favor transfer.

On balance, the relevant private and public interest factors weigh in favor of a Pennsylvania forum. Because Flint has not satisfied his burden to show the relevant interests favor transfer, his motion to transfer will be denied.

**C.     Failure to State a Claim**

Finally, Flint moves to dismiss LNC's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting the Complaint does not sufficiently allege he breached the competitive services restriction in the agreements at issue. The Court disagrees. The Complaint alleges the LNC subsidiaries where Flint worked, including LFS, "are direct competitors of [ProEquities], as they provide the same wealth management, retirement planning and investment advice." Compl. ¶ 20. The Complaint also describes, in general terms, the services provided by LFS and ProEquities. *See id.* ¶¶ 9, 16-18. Although Flint maintains these descriptions make clear that ProEquities, "is not in any way competitive with LFS," Def.'s Mem. in Supp. of Mot. to Dismiss 10, he provides no explanation as to why this is so and fails to address LNC's allegation that LFS and ProEquities "provide the same wealth management, retirement planning and investment advice." While it remains to be seen whether LFS and ProEquities are in fact

competitors, LNC's allegations are sufficient to support a reasonable inference that the companies are competitors and that Flint thus breached the competitive services restriction in the option and stock awards by joining ProEquities following his resignation from LFS.  Flint's motion to dismiss the breach of contract claim for failure to state a claim will therefore be denied.  *See Iqbal*, 556 U.S. at 678 (holding to withstand a Rule 12(b)(6) motion to dismiss, a complaint need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

For the reasons set forth above, Flint's motion to dismiss to the Complaint or, in the alternative, to transfer this case to the Northern District of Alabama will be denied.  An appropriate Order follows.

BY THE COURT:


\_\_\_\_/s/ Juan R. Sánchez\_\_\_\_\_
Juan R. Sánchez, J.